IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DR. PETER E. McGOWAN and<br>MICHELLE L. McGOWAN<br>4922 Highpoint Drive<br>Toledo, Ohio 43615, | )<br>)<br>)<br>) | CASE NO.:<br><br>JUDGE: |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | |
| UNITED STATES OF AMERICA<br>c/o Justin E. Herdman, U.S. Attorney<br>801 West Superior Ave.<br>Suite 400<br>Cleveland, Ohio 44113 | )<br>)<br>)<br>)<br>)<br>) | **COMPLAINT FOR REFUND**<br><br>**(Jury Demand Endorsed Hereon)** |
| c/o Jeff Sessions, Attorney General<br>Department of Justice<br>950 Pennsylvania Ave., N.W.<br>Washington D.C. 205530 | )<br>)<br>)<br>)<br>) | |
| c/o Charles P. Rettig, Commissioner<br>of Internal Revenue<br>Internal Revenue Service<br>1111 Constitution Ave., N.W.<br>Washington D.C. 20224 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Now come Plaintiffs Dr. Peter E. McGowan and Michelle L. McGowan for their Complaint for Refund of taxes paid in tax years 2014 and 2015, and state as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Dr. Peter E. McGowan ("Dr. McGowan") is an individual living at the address stated in the caption of this Complaint, who filed taxes on Form 1040 in each of the years 2014,

2015 and 2016. The years 2014 and 2015 are at issue in this Complaint. However, as a result of the factual allegations herein and the current status of the tax laws, 2016 is implicated as well.

2. On April 9, 2019, the IRS issued a refund for taxes paid by the Taxpayer in 2016. On or about October 27, 2018, the Taxpayers filed Form 1040X for each of the years 2014 and 2015, or in the alternative 2016. The Taxpayers position relative to the income at issue in this case is that all taxes should have been, and were, paid by the Taxpayer in 2016. The taxes paid in 2016 on the income at issue in this case were greater than the taxes that would be doing and owing in 2014 and 2015 combined. Nonetheless, the IRS incorrectly argues the income should have been reported in 2014 and 2015; and, in even then the IRS still misapplied the applicable tax laws to arrive at the taxable amounts in 2014 and 2015.

3. Michelle E. McGowan is the spouse of Dr. McGowan, whose address is located in the caption of this Complaint, who was a joint filer on the Form 1040 filed by Dr. McGowan in tax years 2014, 2015 and 2016.

4. The Defendant is the United States of America.

5. The Internal Revenue Service is a bureau of the Treasury Department, as administrative agency of the United States of America.

6. This is an action for the recovery of Internal Revenue taxes, penalties and interest.

7. The jurisdiction of this Court is based upon the provisions of 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422.

8. Venue is proper in the Northern District of Ohio judicial district pursuant to 28 U.S.C. § 1402(a)(1).

**BACKGROUND AND FACTS**

9. The resolution of this case should determine the following issues:

    a. Is the Peter E. McGowan DDS, Inc. Death Benefit Trust ("Death Benefit Trust") a welfare benefit fund that only provides current year life insurance protection to the employee?

    b. Was Peter E. McGowan DDS, Inc.'s contributions to the Death Benefit Trust in calendar years 2014 and 2015 limited to the amount necessary to fund the current benefit?

    c. Is the only economic benefit to Dr. McGowan under the Death Benefit Trust in 2014 and 2015 limited to the value of the death benefit computed in accordance with IRS Tables?

    d. Is the Death Benefit Trust separate and apart from the Peter E. McGowan DDS, Inc. Restricted Property Trust ("Restricted Property Trust")?

    e. Are the assets owned by the Restricted Property Trust subject to a substantial risk of forfeiture within the meaning of IRC § 83?

    f. Is a charity a beneficiary of the Restricted Property Trust?

    g. Is Aligned Partners Trust Company an independent trustee with sole and exclusive authority to enforce the substantial risk of forfeiture?

    h. Did Dr. McGowan vest in the assets in the Restricted Property Trust in calendar year 2016 at which time the entire value of all assets transferred to Dr. McGowan from the Restricted Property Trust were taxable to and reported as such by Dr. McGowan?

10.    Dr. McGowan is a licensed dentist in the State of Ohio. Dr. McGowan is the sole shareholder of Peter E. McGowan DDS, Inc., an Ohio professional corporation duly incorporated

in accordance with the laws of the State of Ohio (hereinafter, Peter E. McGowan DDS, Inc., will be referred to herein as the "Company").

11. Dr. McGowan is the key employee of the Company. The Company is a community-based independent dental practice. It has been in continuous operation in Toledo, Ohio, since its incorporation on July 14, 1994. The Company's present business address is 5951 Heather Downs Blvd., Toledo, Ohio 43614.

12. The Company is an entity separate and apart from Dr. McGowan, as its sole shareholder.

13. The Company is taxed as a "C" corporation for federal income tax purposes in accordance with subchapter C of the Internal Revenue Code of 1986, as amended.

14. It was the Company's historical practice to "zero out" its income annually such that all of the Company's taxable income is included in Dr. McGowan's wages. Dr. McGowan annually reports the entire amount of the taxable income of the Company in his W-2 compensation.

15. Prior to the adoption of the Peter E. McGowan DDS, Inc., Benefits Trust Agreement (the "Benefits Trust Agreement") establishing the Peter E. McGowan DDS, Inc., Benefits Trust (the "Benefits Trust") Dr. McGowan received 100% of the money that was included in his income annually, which he could use for his immediate use and enjoyment.

16. As a result of the historical practice of "zeroing out" its income, the Company did not retain substantial amounts of liquidity or cash.

17. In the interest of ensuring its continuity in the event of Dr. McGowan's untimely death, the Company adopted the Death Benefit Trust in 2011. The purpose of funding this death benefit was to provide a beneficiary sufficient liquidity to continue the Company's independent community-based dental practice in the event of Dr. McGowan's death.

18. Because Dr. McGowan is its key employee, the Company would likely cease to exist upon his death in the absence of liquidity. This would impose undue burdens on those associated with the Company. Employees would have to find new jobs and patients would have to find new dental service professionals.

19. An off-the-shelf pure whole life insurance policy issued by Penn Mutual Life Insurance Company ("Penn Mutual") was acquired by the Trustee (defined below) of the Death Benefit Trust to fund the death benefit. The Company deemed the insurance policy necessary and appropriate because of the permanent need for continuing death benefits and the impact changing health conditions could have on an individual's ability to obtain cost-effective life insurance, if the insured was even then insurable.

20. On June 14, 2011, the Company adopted the Benefits Trust through which the benefits set forth therein are provided.

21. The Trustee of the Benefits Trust Agreement, including the two separate sub trusts described therein, namely the Death Benefit Trust and the Restricted Property Trust, was Aligned Partners Trust Company, Inc., an independent trust company based out of Pittsburgh, Pennsylvania (the "Trustee"). The Trustee has no affiliation to the Company or Dr. McGowan. The Trustee receives an arms-length reasonable fee for the services it provides.

22. The Benefits Trust provides two separate and distinct benefits to Dr. McGowan as an employee of the Company.

23. The first benefit provided to Dr. McGowan is a current year death benefit. This current year death benefit is funded with the current cost of the benefit, plus all administrative charges and expenses, as set forth in the Flexible Premium Whole Life insurance contract (the "Policy") provided by Penn Mutual.

24. Pursuant to the Policy, the failure to pay the base portion premium in any year automatically results in the Policy lapsing. The lapsing of the Policy is unavoidable under the terms of the Benefits Trust Agreement as there is no money available to pay the subsequent year contractually obligated base portion premium.

25. The second benefit provided to Dr. McGowan by the Company is restricted compensation payable to Dr. McGowan only in accordance with the terms of the Restricted Property Trust.

26. All money contributed to, and assets owned by, the Restricted Property Trust are subject to a substantial risk of forfeiture such that neither Dr. McGowan, the charitable beneficiary, nor any other person or entity has any rights, title, or interest in the restricted compensation until such time that the risk of forfeiture occurs or lapses pursuant to the terms of the Restricted Property Trust.

27. The risk of forfeiture expired in calendar year 2016. Upon vesting, Dr. McGowan reported as taxable income the entire value of Policy less any amounts he included in income prior to vesting despite the substantial risk of forfeiture.

28. In the event that Dr. McGowan did not vest in the restricted compensatory benefit, 100% of all assets associated with that restricted compensation are forfeited to a charity. Pursuant to the terms of the Restricted Property Trust, the assets subject to forfeiture equal 100% of the cash value of the lapsed Policy.

29. Dr. McGowan selected the charity to which the restricted compensation would be distributed, directly by the Trustee, in the event of forfeiture. The Trustee and the the charity were notified of the latter's beneficial interest in the Restricted Property Trust.

6

30. The Trustee has a fiduciary obligation to the Restricted Property Trust beneficiaries and is mandated by the Benefits Trust Agreement to enforce the risk of forfeiture should events giving rise to forfeiture occur.

31. Prior to adopting the Benefits Trust Agreement, the Company and Dr. McGowan were informed of and discussed each of its component parts with their advisors, including but not limited to:

- the business purpose for which the Company is funding the death benefit;

- the fact that the only benefit to which Dr. McGowan is entitled is a death benefit if the base portion premium is continually and timely contributed to the Death Benefit Trust up to and including in the year of Dr. McGowan's untimely death;

- the fact that all assets owned by Restricted Property Trust are subject to a substantial risk of forfeiture;

- the events giving rise to forfeiture;

- the obligation of Dr. McGowan to include in taxable income the current economic value of the current life insurance protection provided under the Death Benefit Trust, computed in accordance with IRS tables;

- the purpose of including contributions to the Restricted Property Trust in income currently, notwithstanding the substantial risk of forfeiture, to which such assets were subject unless and until the risk of forfeiture expired; and

- the taxable event to Dr. McGowan that would occur if his beneficial interest in the Restricted Property Trust vested in 2016.

32. In 2011, the Company disclosed to the IRS the deductions reported on the Company's Form 1120 and on a detailed Form 8275, which set all facts and laws in support of the tax reporting position on the Form 1120.

33. The Benefits Trust Agreement sets forth the terms and conditions of the two separate sub trusts, the Death Benefit Trust and the Restricted Property Trust.

34. The Death Benefit Trust and the Restricted Property Trust are each irrevocable trusts.

35. The Benefits Trust Agreement identifies: the terms and conditions upon which the Trustee shall hold and administer assets of the separate sub trusts; the separate assets owned by the separate trusts; the separate beneficiaries of the respective sub trusts; the conditions upon which the separate beneficiaries may receive distributions, including the possibility upon which either Dr. McGowan would receive the restricted compensation in absence of forfeiture, or how the designated charities would receive the assets of the Restricted Property Trust in the event of forfeiture.

36. Concurrent with executing the Benefits Trust Agreement, the Company and Dr. McGowan entered into a Death Benefit Agreement. Pursuant to the Death Benefit Agreement, the Company agreed to contribute to the Death Benefit Trust an amount equal to the base portion premium of a pure whole life insurance policy issued by Penn Mutual, i.e., the Policy. The Company's contribution was in an amount equal to, not in excess of, the current cost of the insurance in order to obtain an initial face value death benefit of $2,096,062. Dr. McGowan recognized the compensatory intent for funding the death benefit in furtherance of the Company's intended business purpose. Accordingly, Dr. McGowan agreed to recognize the current economic benefit based upon the value of the current life insurance protection computed in accordance with IRS tables.

37. During tax years 2014 and 2015, the only economic benefit Dr. McGowan received was the current life insurance protection based on the funding of the current cost of such benefit. This benefit was in his capacity as the insured under the Death Benefit Trust. Dr. McGowan had

no other economic benefits in those years as the assets owned by the Restricted Property Trust remained subject to a substantial risk of forfeiture.

38. Penn Mutual established the annual base portion premium for the Policy at $37,222, which the Company agreed to pay in order to fund the Death Benefit Trust in each year that Dr. McGowan remained employed.

39. The Death Benefit Trust was established upon the initial contribution of the $37,222 base portion premium, in accordance with Article III of the Benefits Trust Agreement.

40. The initial contribution to the Death Benefit Trust provided one benefit, a death benefit, for a duration of one year.

41. In order to provide life insurance protection in year 2 under the Death Benefit Trust, the Company was required to make a timely contribution to the Death Benefit Trust of the base portion premium. The same timely contribution was required through 2015, lest forfeiture would occur.

42. During the years 2011 through vesting in the Restricted Property Trust in 2016, the only benefit to which Dr. McGowan was entitled was a current year death benefit, assuming the Company timely contributed the requisite base portion premium to the Death Benefit Trust in 2011, 2012, 2013, 2014 and 2015.

43. Separately, Dr. McGowan and the Company entered into a Restricted Property Agreement pursuant to which the Company agreed to contribute to the Restricted Property Trust an amount equal to $12,778 each year on behalf of Dr. McGowan. The Restricted Property Agreement set forth that, consistent with the terms of the Restricted Property Trust, the assets contained therein would remain subject to a substantial risk of forfeiture until the risk expired.

9

Pursuant to the Restricted Property Agreement, the substantial risk of forfeiture would expire at the end of the fifth year following execution of the Restricted Property Agreement.

44. Prior to the expiration of the substantial risk of forfeiture, Dr. McGowan had no rights, title, or interest in any of the assets in the Restricted Property Trust. Dr. McGowan could **not** pledge, transfer, assign, borrow against, or in any way access the funds in the Restricted Property Trust prior to expiration of the substantial risk of forfeiture.

45. Enforcement of the substantial risk of forfeiture vested solely and exclusively in the Trustee.

46. Dr. McGowan agreed to include each contribution made by the Company to the Restricted Property Trust in current income. He did so notwithstanding the substantial risk of forfeiture to which the funds in the Restricted Property Trust are subject, pursuant to both the terms of the Restricted Property Agreement and the Restricted Property Trust, itself.

47. The Internal Revenue Service did not dispute that the Company was entitled to a deduction for contributions to the Restricted Property Trust that was concurrently included in Dr. McGowan's income, despite the substantial risk of forfeiture.

48. The Death Benefit Trust owned one asset at all relevant times, that being Penn Mutual policy No. 8266485 (i.e., Policy), a pure whole life insurance policy with an initial face value death benefit of $2,096,062, which was funded with the base portion premium of $37,222.

49. The base portion premium is required to be paid pursuant to the Policy in each and every year of the Policy, both prior to and after vesting, continuing through the next 99 or so years.

50. Dr. McGowan, the Company and the Trustee were further advised that the Policy did not and could not have an automatic loan to pay premium feature.

10

51. The elimination of an automatic loan to pay premium feature required affirmative election by the Trustee. Said election was necessary, as all cash value of the Policy constituted potential assets payable to the designated charitable beneficiary. Put differently, the cash value of the Policy could not be diverted for the benefit of the insured, or anyone else, to keep the Policy in force by paying the base portion premium if the Company failed for any reason to make the required timely contribution to the Death Benefit Trust.

52. Dr. McGowan was advised that any assets in the Restricted Property Trust not previously included in income is subject to tax at vesting. The amounts included in income prior to vesting include the annual contributions to the Restricted Property Trust *i.e.*, $12,778 per year, plus all appreciation attributable thereto. Upon vesting in the benefits of the Restricted Property Trust, the Trustee provided Dr. McGowan with a Form 1099-R in an amount equal to the full value of the cash value of the Policy, which further references the taxable amount, after taking into account the prior income inclusions plus the appreciation attributable thereto. The Form 1099-R indicated that the gross value of the Policy was $186,691 and the taxable amount to Dr. McGowan was $115,227.

53. The difference between the taxable amount and the gross distribution is attributable to the amounts previously included in Dr. McGowan's income, i.e. $12,778 annually, plus appreciation thereto.

54. Dr. McGowan previously paid tax (in years 2011 through 2015) in the aggregate of $63,890, which appreciated to $71,464. Consequently, the resulting taxable amount of the $186,691 distribution, as set forth on the Form 1099-R was reduced to $115,227. Dr. McGowan included the taxable distribution of $115,227 on his 2016 Form 1040 and paid tax on said amount at that time.

55. The IRS commenced an audit of Dr. McGowan's 2014 and 2015 Form 1040 and the Company's Form 1120 with respect to the contributions made to the Benefits Trust Agreement.

56. While not directly the subject of this case, the IRS proposed disallowing a deduction for contribution to the Death Benefit Trust in the amount of $37,222 in each of 2014 and 2015. The IRS did not propose disallowing contributions to the Restricted Property Trust in the amount of $12,778 in 2014 and 2015.

57. The Company appealed the IRS's proposed disallowance of the $37,222 contribution, made in years 2014 and 2015, to the Death Benefit Trust, an actual welfare benefit fund adopted in accordance with and consisting of terms compliant with IRC § 419. Said amount was deducted in accordance with IRC § 162 in furtherance of an ordinary, necessary and reasonable business purpose and which deduction is limited to the qualified cost of the Death Benefit Trust as it is the amount necessary to fund the current cost of the insurance benefit provided, plus all administrative charges and expenses.

58. It is irreconcilable that the IRS would disallow a deduction to the Company in the years 2014 and 2015, and then allege that this same amount represents current compensation to the employee in those years.

59. On April 26, 2018, the IRS issued a Notice of Deficiency for tax years 2014 and 2015 for Dr. McGowan's Form 1040, assessing taxes, penalties and interest owed due to alleged underpayment of taxes with respect to contributions made by the Company to the Death Benefit Trust. A copy of this Notice of Deficiency is attached hereto as Exhibit A.

60. For 2014, the alleged deficiency was $30,813 with penalties in the amount of $6,161.60 pursuant to IRC § 6662(a).

61. With respect to 2015, the alleged deficiency was $23,857, with an additional penalty pursuant to IRC § 6662 in the amount of $4,758.20.

62. On July 11, 2018, Plaintiffs executed Form 4089-B, waiving the Notice of Deficiency. A copy of this waiver is attached hereto as Exhibit B.

63. On September 20, 2018, Plaintiffs received a bill from the IRS as a result of the Waiver of the Notice of Deficiency, assessing the taxes relative to 2014 and 2015.

64. With respect to 2014, the IRS billed for taxes in the amount of $30,813, substantial understatement of penalty in the amount of $6,161.60 and an increase in interest to $4,967.17, making the total amount due and payable for 2014, $41,941.77.

65. With respect to 2015, the IRS billed for taxes in the amount of $23,857, the substantial understatement penalty was $4,758.20 and the increase in interest was $2,877.15, making the total amount payable for 2015, $31,492.35.

66. On October 15, 2018, Plaintiffs remitted payment in the amount set forth on the above billing summaries with respect to 2014 and 2015. The Plaintiffs included with said payment additional interest, as the IRS bill computed interest through October 1, 2018.

67. On October 26, 2018, Plaintiffs filed Form 1040X for years 2014 and 2015 and, in the alternative, Plaintiffs filed a Form 1040X requesting a refund for 2016.

68. On October 26, 2018, Plaintiffs filed the waiver with respect to processing the Form 1040X to allow this refund claim to proceed.

69. On October 26, 2018, Plaintiffs filed a claim for refund, Form 843, with the IRS. A copy of the Form 843 is attached hereto as Exhibit C.

70. Plaintiffs file the within refund claim on the basis that until such time that the substantial risk of forfeiture expired, which occurred in 2016, Plaintiffs were not required to

include in income any amount of the cash value of the Policy that was not previously subject to tax. When that substantial risk of forfeiture expired, Plaintiffs correctly included the amount of $115,227 in income pursuant to the Form 1099-R.

71. On or about April 5, 2019, the IRS issued a check to Dr. McGowan in the amount of $44,022.77, based on the IRS accepting the tax adjustment reported, in the alternative, on the Form 1040X for 2016.

72. The Plaintiffs remain of the position that the assets distributed from the Restricted Property Trust in tax year 2016 were properly taxable to the Plaintiffs in 2016, notwithstanding the IRS accepting the alternate relief set forth on the 1040X concurrently filed with the 1040X for tax years 2014 and 2015, together with a draft copy of this complaint,

73. Accordingly, Plaintiffs hereby request a refund for taxes, penalties and interest paid relative to 2014 and 2015.

74. Plaintiffs assert that the Defendant's computation of the tax deficiencies in 2014 and 2015 for the reasons stated in the Notice of Deficiency and the Form 886-A enclosed with such Notice of Deficiency was in error.

75. Regardless, the computation of the taxable deficiency in 2014 and 2015 is incorrect. Pursuant to Form 886-A, the 2014 deficiency resulting from the $81,350 increase in income was attributable to the following items: $15,000 from 2011; $15,000 from 2012; $15,000 from 2013; and $36,350 from 2014, which the IRS alleged in the Notice of Deficiency constituted an additional $81,350 of income to the Plaintiffs in the year 2014.

76. The IRS explained that the $15,000 from 2011 that was included as additional income to Plaintiffs in 2014 was on account of $15,000 representing the "cost of life insurance in 2011."

77. To the contrary, the cost of life insurance in 2014 was $37,222. Absent payment in that amount, no death benefit would have been provided and forfeiture would have occurred.

78. Penn Mutual unilaterally determined the cost of the insurance as computed in accordance with its proprietary methods. As alleged above, Dr. McGowan was required to include in income the value of the economic benefit of current life insurance protection computed in accordance with IRS Tables. Neither $37,222, nor $15,000 represents the value of this economic benefit.

79. Any cash value of the Policy in 2011 was solely attributable to the $12,778 contributed to the Restricted Property Trust, which amount Dr. McGowan included in income in 2011. The cash value of the Policy in 2011 was $11,561.

80. Plaintiffs dispute the computation of the 2014 increase in income resulting in the alleged tax deficiency to the extent it included $15,000 attributable to the "cost of insurance" in 2011.

81. Likewise, in 2012, the IRS indicated the cost of life insurance was $15,000, which was incorporated into the increase in taxable income for 2014.

82. Plaintiffs dispute that $15,000 represents the cost of insurance in 2012. Rather, the base portion premium represents the current cost of the insurance, plus all administrative charges and expenses and the failure of the Trustee to receive such amount would have resulted in the Policy lapsing and all assets in the Restricted Property Trust being forfeited and transferred to the designated charities.

83. It is inexplicable how the alleged income in 2011 or 2012 could be taxed to Plaintiffs in 2014. Moreover, the entire cash value of the Policy at the end of 2012 was only

15

$24,338, but as of the end of 2012, Dr. McGowan already included in income $25,556 (which appreciated from the date of the initial contribution in 2011).

84. As alleged above, Dr. McGowan was required to include in income the value of the economic benefit of current life insurance protection computed in accordance with IRS Tables. Neither $37,222, nor $15,000 represents the value of this economic benefit.

85. Likewise, the IRS improperly included in Plaintiffs' 2014 income $15,000 from the 2013 "cost of life insurance" from that year. Plaintiffs dispute this arbitrary cost of insurance amount for all the same reasons alleged above.

86. Further, as in 2011 and 2012, Plaintiffs included in income $12,778 contributed by the Company to the Restricted Property Trust in 2013.

87. Thus, as of 2013, Plaintiffs included in income $38,334, i.e., $12,778 times each of the three contributions to the Restricted Property Trust. This amount also appreciated from the date of the initial contribution in 2011. At the end of 2013, the aggregate cash value of the Policy was only $44,775.

88. The IRS alleges that in 2014, $36,350 should have been included in income. As described by the IRS, this amount is comprised of two parts: $15,000 for the "cost of life insurance" and $21,350 as "from statements." Again, with respect to the $15,000, the cost of life insurance is $37,222 and this is the amount contributed by the Company to the Death Benefit Trust.

89. In 2014, Plaintiffs agree that the total cash value of the Policy was $81,350. However, this is after the Plaintiffs' included in income in 2014, the fourth contribution by the Company of $12,778 to the Restricted Property Trust, which was invested in the Policy and which amount appreciated.

90. Thus, as of 2014, Plaintiffs had already included $51,112 in income, which appreciated via dividends paid by Penn Mutual to all of its policyholders.

91. Plaintiffs acknowledge that a certain portion of the base portion premium ($37,222) goes into the cash value of the Policy, which is the reason the cash value exceeds the amounts previously included in Dr. McGowan's income. However, Dr. McGowan had no present or future right to any of the cash value in 2014 or 2015, as such amounts remained owned by the Restricted Property Trust and subject to a substantial risk of forfeiture.

92. Plaintiffs further assert that the entire amount of $37,222 that is contributed to the Death Benefit Trust amount represents the current cost of insurance plus all administrative charges and expenses no matter how the amount is invested with respect to the Policy, as this is dictated by Penn Mutual's proprietary formula. With respect to this contribution, which only provides the insured employee with current year life insurance protection, the insured employee was required, as instructed by the invoices provided each year, to include the value of the economic benefit in income in an amount computed in accordance with IRS tables.

93. Plaintiffs further assert that even though a certain portion of the base portion premium does go into the cash value of the Policy, it remains subject to the same substantial risk of forfeiture to which the entire cash value is subject. Additionally, the Restricted Property Trust owns all cash value prior to vesting. Accordingly, Dr. McGowan did not have to pay tax on this differential from 2014 until he vested in 2016, at which time he paid tax on this amount.

94. The IRS incorrectly, and without explanation, argues "income" to Dr. McGowan in years 2011-2013 should be taxed to Dr. McGowan in 2014. The IRS doubles down and further argues Dr. McGowan should be taxed on all payments of premiums for the Policy when made and should be taxed on the appreciation of the cash value of the Policy.

95. Ironically, if the tax laws were properly applied by the IRS, upon expiration of the risk of forfeiture in tax year 2016, the IRS would be able to tax Dr. McGowan on the appreciated value of the asset distributed from the Restricted Property Trust, which appreciated amount Dr. McGowan did include in his taxable income in 2016. However, under the IRS's theory of the taxation of the contributions made by the Company to the Death Benefit Trust, the appreciation of the asset is not subject to tax despite the IRS's assertion, without explanation, in the Notice of Deficiency. Attached hereto as Exhibits D and E are tables juxtaposing Plaintiffs' position with the IRS's position.

96. To be clear, the only "income" to Dr. McGowan in tax year 2014 is the value of the economic benefit to Dr. McGowan resulting from the current life insurance protection, computed in accordance with IRS tables. The assets owned by the Restricted Property Trust do not represent "income" to Dr. McGowan in 2014 as such assets remain subject to a substantial risk of forfeiture.

97. In 2015, the IRS assessed an additional $62,323 in Plaintiffs' income, which was computed based upon the increase in the cash value from 2014 through 2015.

98. Per the IRS's computation, the cash value in 2015 was $143,673, less the 2014 cash value of $81,350. Again, Defendant incorrectly asserts the cost of insurance is $15,000, but this does not appear to affect the amount of the assessment in 2015. Further, Defendant does not take into account the additional contribution of $12,778, plus all prior amounts and all prior appreciation of such annual contributions. Thus, of this $143,673, Plaintiffs already paid tax on $63,890, plus appreciation.

99. As in the assessment for Tax Year 2014, the IRS incorrectly, and without explanation, argues Dr. McGowan should be taxed on all payments of premiums for the Policy when made and should be taxed on the appreciation of the cash value of the Policy.

100. Again, the only "income" to Dr. McGowan in tax year 2015 is the value of the economic benefit to Dr. McGowan resulting from the current life insurance protection, computed in accordance with IRS tables. The assets owned by the Restricted Property Trust do not represent "income" to Dr. McGowan in 2015 as such assets remain subject to a substantial risk of forfeiture.

101. The Form 886-A indicates that the total cash value in 2016 is $186,691, which is consistent with the amount set forth on the Form 1099-R provided to Dr. McGowan. Of the $186,691 gross distribution, the taxable portion in 2016 was only $115,227 due to the $12,778 Dr. McGowan included in income in years 2011-2015, plus all appreciation.

102. Even if a portion of the Restricted Property Trust's cash value was subject to tax in 2014 and 2015, based on a finding that there was no substantial risk of forfeiture, the IRS's computations are in error for the reasons set forth above.

103. If the IRS's assessment for 2014 and 2015 are found to be in error, the Taxpayers will re-amend their Form 1040 to 2016 and pay the tax as originally reported.

## COUNT I

104. Plaintiffs incorporate by reference the above paragraphs of the within Complaint.

105. The IRS's April 26, 2018, Notice of Deficiency (Ex. A) erroneously assessed taxes, penalties and interest owed due to alleged underpayment of taxes with respect to contributions made by the Company to the Benefits Trust Agreement.

106. Plaintiffs included in income the value of the economic benefit of current life insurance protection computed in accordance with IRS Tables for the years in question in accordance with IRS Tables. Plaintiffs also included in income contributions to the Restricted Property Trust despite such amounts being subject to a substantial risk of forfeiture.

107. Plaintiffs timely paid all required taxes for the years in question.

108. Plaintiffs paid above and beyond the required taxes for the years in question pursuant to the IRS's incorrect assessment.

109. Plaintiffs are entitled to recover all amounts remitted pursuant to the IRS's incorrect assessment, plus interest, associated costs and fees reasonably incurred to correct the error.

WHEREFORE, Plaintiffs demand judgment and other relief against Defendant as follows:

a) A full refund of the taxes, penalties and interest erroneously assessed against Plaintiffs in years 2014 and 2015, in the amount of $73,900, plus interest and costs allowed by law; and

b) All other relief to which Plaintiffs may be entitled, including an award of attorneys' fees in accordance with 26 U.S.C. § 7430.

Respectfully submitted,

*/s/ Matthew C. Miller*
Walter A. Lucas (0068150)
Samuel J. Lauricia III (0078158)
Matthew C. Miller (0084977)
Scott J. Orille (0069192)
**WESTON HURD LLP**
1301 E. 9th Street, Suite 1900
Cleveland, Ohio 44114
Phone: 216-241-6602; Fax: 216-641-8369
E-mail: WLucas@westonhurd.com
SLauricia@westonhurd.com
MMiller@westonhurd.com
SOrille@westonhurd.com
*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby request a trial by jury in this matter according to all applicable law.

*/s/ Matthew C. Miller*
Matthew C. Miller (0084977)