## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**DR. PETER E. MCGOWAN, et al.,**            CASE NO. 3:19 CV 1073

      Plaintiffs,

      v.                                   JUDGE JAMES R. KNEPP II

**UNITED STATES OF AMERICA,**

      Defendant.                           **MEMORANDUM OPINION AND
ORDER**

### INTRODUCTION

In 2011, Dr. Peter E. McGowan put in place for his business a life insurance policy product known as a Restricted Property Trust. In 2016, that policy vested, and its cash value transferred to Dr. McGowan. The IRS audited Dr. McGowan's business, concluded it had incorrectly claimed deductions, and imposed additional tax and penalties against Dr. McGowan and the company. Dr. McGowan and the company paid the additional tax and penalties under protest and then filed this suit for a refund.

Currently pending in the case are motions for summary judgment by Plaintiffs (Dr. McGowan; his wife, Michelle L. McGowan; and his company, Peter E. McGowan DDS, Inc.) (Doc. 103) and Defendant (the United States Government) (Doc. 102), as well as Plaintiffs' motion to shift the burden of proof to Defendant (Doc. 107). For the following reasons, the Court denies Plaintiffs' motion to shift the burden of proof, denies in full Plaintiffs' motion for summary judgment, and partially grants and partially denies Defendant's motion for summary judgment.

## BACKGROUND

Plaintiff Peter E. McGowan ("Dr. McGowan") established his current dental practice, Plaintiff Peter E. McGowan DDS, Inc. ("the Company"), in 1994; it is taxed as a C corporation, and he is its sole shareholder. (Doc. 37, at 5). The Company adopted a whole life insurance policy called a Restricted Property Trust in 2011. *Id.* at 6.

The structure of the Restricted Property Trust is governed by the Benefits Trust Agreement, which was filed as an exhibit by both parties. (Doc. 102-1; Doc. 103-1). The Benefits Trust Agreement created two irrevocable "subtrusts", the Death Benefit Trust ("DBT") and the Restricted Property Trust ("RPT"). (Doc. 103-1, at 1). The trustee of both subtrusts in this case was Aligned Partners Trust Company. *Id.* at 18. Dr. McGowan's company paid $37,222 to the DBT each year and $12,778 to the RPT each year. *Id.* at 4.

The DBT then uses its yearly contribution to pay the premium on a whole life insurance policy. *Id.* The RPT transfers its yearly contribution to the DBT, which then invests the RPT's contribution as a "paid-up addition" to the policy to increase its cash value and death benefit. *Id.* at 4-5. In return, the DBT subtrust gives the RPT subtrust a security interest in the insurance policy. *Id.* at 5. The policy structure has terms of five years; as long as the premium is paid by the DBT each year, the transaction remains in effect for the five-year term. *Id.* at 7. During this time, the insurance policy is owned by the DBT, which, along with the RPT, is owned by the trustee. *Id.* at 6. The contract stated that Dr. McGowan and the Company had no "interest or right in or to" the policy while owned by the DBT. *Id.*

If Dr. McGowan dies during the term, the insurance company pays the death benefit to the DBT, which then pays it to Dr. McGowan's designee. *Id.* At the end of the term, the Company can extend the transaction for another five-year term; if it isn't extended, the

2

transaction ends and the life insurance policy is transferred to Dr. McGowan. *Id.* at 8. Dr. McGowan's designee was his wife, Plaintiff Michelle McGowan. (Doc. 102-5, Beneficiary Designation, at 1). If the Company does not pay the premium to the DBT, the DBT surrenders the policy for its cash value, transfers that cash to the RPT to satisfy the RPT's security interest, and the RPT pays the cash value to a charity designated by Dr. McGowan. (Doc. 103-1, at 9).

Dr. McGowan and the Company purchased the Restricted Property Trust and adopted the Benefits Trust Agreement in 2011. (Doc. 37, at 5-6). The initial value of the insurance policy's death benefit was $2,096,062. *Id.* at 9. After five years of paying the premiums, the Company did not renew the transaction, and the insurance policy was transferred to Dr. McGowan. *Id.* at 7. Dr. McGowan apparently attempted to renew the transaction in 2016, according to an amendment to the Benefits Trust Agreement, but this attempted renewal was made a year too late by the terms of the original agreement, and in 2017, counsel for Dr. McGowan informed the IRS the transaction and its trusts were no longer in effect. (Doc. 102-12, First Amendment to Benefits Trust Agreement, at 1; Doc. 102-8, 2017 Letter to IRS, at 16). "Upon vesting, Dr. McGowan reported as taxable income the entire value of [the policy] less any amounts he included in income prior to vesting." (Doc. 37, at 7).

The Company reported the $12,778 paid yearly by the Company to the RPT as part of its income in each applicable tax years. (Doc. 102-8, at 17). According to the Company's 2012 tax return, this figure was included as income pursuant to 26 U.S.C. § 83(b), which allows a taxpayer who receives income subject to a "substantial risk of forfeiture" to elect to pay tax on the income when it is received instead of when the forfeiture either occurs or expires. (Doc. 102-9, 2012 Tax Return, at 10); 26 U.S.C. § 83(b). Plaintiffs refer to the possibility the cash value of the policy being transferred to charity in the event the Company failed to pay the policy

3

premiums as the substantial risk of forfeiture. *See, e.g.*, Doc. 37, at 11. The Company also deducted this amount as compensation paid to an employee each year. (Doc. 102-9, at 10; Doc. 102-8, at 17).

The Company did not report the $37,222 contributed to the DBT as part of its income each year. (Doc. 102-8, at 17). Plaintiffs do not offer a reason for omitting it, but the 2017 letter to the IRS appears to tacitly acknowledge the omission was incorrect. *Id.* ("For whatever reason, the Taxpayer did not include the economic benefit of the death benefit in the employee's income in each year."). The Company did list the payment to the DBT each year as a deduction on its tax return as a contribution to a welfare benefit trust for an employee's benefit. *Id.*; *see also* Doc. 102-9, at 10. Because the figure contributed to the DBT each year was not reported as income, Plaintiffs' counsel stated in the 2017 letter to the IRS that the deductions made on these amounts were overstated "in 2011 by $1,397; in 2012 by $1,543; in 2013 by $1,626; in 2014 by $1,749; and [in 2015 by] $1,852." (Doc. 102-8, at 17).

"Dr. McGowan was advised that any assets in the Restricted Property Trust not previously included in income [are] subject to tax at vesting." (Doc. 37, at 12). According to a Form 1099-R provided to Dr. McGowan by the trustee, the gross value of the policy at the time of vesting was $186,691 and the taxable amount was $115,227, the difference being the $12,778 annual RPT payments reported as income "and appreciation thereto." *Id.* Dr. McGowan reported the $115,227 figure as taxable on his 2016 tax return. *Id.* at 13.

In April 2018, the IRS issued a Notice of Deficiency to Dr. McGowan. (Doc. 37-1, at 1). It assessed a tax deficiency of $30,813 and a penalty for substantial understatement of income tax of $6,161.60 for tax year 2014 and a tax deficiency of $23,857 and a penalty of $4,758.20 for tax year 2015. *Id.* at 2. According to the Notice of Deficiency, Dr. McGowan reported his 2014

income as $235,216, and the IRS corrected his reportable income to $339,705; in 2015, Dr. McGowan reported $315,079, and the IRS corrected it to $391,740. *Id.* at 18. The largest adjustments to taxable income both years were listed as "other income." *Id.* These discrepancies changed Dr. McGowan's tax liability for 2014 from $65,857 to $96,670, and his tax liability for 2015 from $90,611 to $114,468. *Id.* The McGowans elected to pay the assessed deficiencies, penalties, and interest calculated by the IRS and later proceed with this refund claim. (Doc. 37-2, at 1).

In December 2019, the IRS issued a Notice of Deficiency to the Company. (Doc. 37-6, at 1). It assessed a tax deficiency of $15,897 and a penalty of $4,354.97 for tax year 2014 and a tax deficiency of $12,558 and a penalty of $4,354.97 for tax year 2015. *Id.* According to the Notice, the Company reported no taxable income in 2014; the IRS corrected that figure to $45,420. *Id.* at 12. The Company reported negative $12,046 as taxable income in 2015; the IRS corrected it to $35,881. *Id.* The largest adjustments to the Company's taxable income both years were the deductions listed for the $37,222 contributions to the DBT. *Id.* These discrepancies changed the Company's tax liability for 2014 from zero dollars to $15,897, and its tax liability for 2015 from zero dollars to $12,558. *Id.* After an administrative appeal process, the Company elected to pay the assessed deficiencies, penalties, and interest calculated by the IRS and later proceed with this refund claim. (Doc. 37-9, at 1).

### STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "In a tax refund suit, plaintiffs have the burden of proving by a preponderance of the evidence that they are entitled to a refund." *Dargie v. United States*, 742 F.3d 243, 245 (6th Cir. 2014).

DISCUSSION

In their Amended Complaint, Plaintiffs bring six claims: (1) a refund of the additional tax, interest, and penalty assessed by the IRS to Dr. McGowan for underpayment (Doc. 37, at 27-28); (2) a refund of the additional tax, interest, and penalty assessed by the IRS to the Company for underpayment (*id.* at 28); (3) a refund of a penalty assessed by the IRS to the Company for failing to disclose a reportable transaction (*id.* at 28-29); (4) unauthorized agency action in violation of the Administrative Procedures Act ("APA") (*id.* at 29); (5) arbitrary and capricious action in violation of the APA (*id.* at 32); and (6) failure to provide notice and opportunity for comment in violation of the APA (*id.* at 33). The parties have filed competing motions for summary judgment. (Docs. 102 and 103). Plaintiffs also filed a motion to shift the burden of proof to Defendant. (Doc. 107).

Motions for Summary Judgment

Plaintiffs move for summary judgment on all claims. (Doc. 103, at 1). Defendant moves for summary judgment only on counts I and II (Plaintiffs' requests for refund of additional tax, interest, and penalties assessed to Dr. McGowan and the Company). (Doc. 102, at 5). Each party opposed the other's motion and replied in support of its own. (Docs. 105, 106, 108, and 109).

The Court finds Defendant is entitled to partial summary judgment on the two counts for which it moved and finds Plaintiffs are not entitled to summary judgment on any count.

*Claims for Refund*

Defendant argues the additional tax assessments to Dr. McGowan and the Company were made because the "split-dollar" regulation, 26 C.F.R. § 1.61-22, applies to the Restricted Property Trust life insurance transaction. (Doc. 102, at 14-15). Defendant asserts that under this regulation, "the Restricted Property Trust is treated as a distribution of the Company's profits to Dr. McGowan. Because Dr. McGowan must treat dividends as income, and the Company cannot deduct its dividends, Dr. McGowan was required to pay tax on the cash value of the Policy and the Company could not deduct its payments." *Id.* Plaintiffs argue the requirements of the split-dollar regulation are not met in this case. (Doc. 103, at 22).

The regulation defines a split-dollar life insurance arrangement as "any arrangement between an owner and a non-owner of a life insurance contract" where:

(A) The arrangement is entered into in connection with the performance of services and is not part of a group-term life insurance plan described in section 79;

(B) The employer or service recipient pays, directly or indirectly, all or any portion of the premiums; and

(C) Either—

(1) The beneficiary of all or any portion of the death benefit is designated by the employee or service provider or is any person whom the employee or service provider would reasonably be expected to designate as the beneficiary; or

(2) The employee or service provider has any interest in the policy cash value of the life insurance contract.

26 C.F.R. § 1.61-22(b)(2)(ii). If a life insurance transaction meets these requirements, it is subject to the taxation rules set forth in paragraphs (d) through (g) of the regulation. 26 C.F.R. § 1.61-22(a)(2).

Plaintiffs do not dispute that the arrangement was "entered into in connection with the performance of services." Additionally, the Restricted Property Trust was a whole life insurance policy, not a group-term life insurance plan. *See* Doc. 37, at 6. The requirement of subparagraph A is therefore satisfied. Plaintiffs concede that the premiums were paid by the Company (the employer), which satisfies subparagraph B. (Doc. 37, at 5-6). And according to the terms of the Benefits Trust Agreement, upon Dr. McGowan's death, the death benefit would be paid by the RPT subtrust to Dr. McGowan's designee. (Doc. 103-1, at 6). His designee was his wife, Michelle McGowan. (Doc. 102-5, at 1). The parties primarily disagree over whether this case meets the overarching criteria that the transaction was between an owner and non-owner of the policy, which would require the Company to be treated as the policy owner.

*Policy Ownership*

The insurance policy was owned during the five-year Restricted Property Trust term by the DBT subtrust, which was owned by trustee Aligned Partners Trust Company. (Doc. 103-1, at 6); (Doc. 102-4, at 4). Plaintiffs contend this means the split-dollar regulation is inapplicable. (Doc. 105, at 13). Defendant responds that "in the case of a compensatory split-dollar arrangement, the employer is treated as the owner if the owner is an employee trust or welfare benefit fund." (Doc. 109, at 6). The regulation itself provides that "the employer . . . is treated as the owner of the life insurance contract if the owner . . . of the life insurance contract . . . is":

(A) A trust described in section 402(b);

(B) A trust that is treated as owned (within the meaning of sections 671 through 677) by the employer or the service recipient;

8

(C) A welfare benefit fund within the meaning of section 419(e)(1); or

(D) A member of the employer or service recipient's controlled group (within the meaning of section 414(b)) or a trade or business that is under common control with the employer or service recipient (within the meaning of section 414(c)).

26 C.F.R. §1.61-22(c)(1)(iii). Section 419(e)(1) defines a welfare benefit fund as any fund "which is part of a plan of an employer, and . . . through which the employer provides welfare benefits to employees or their beneficiaries." 26 U.S.C. § 419(e)(1). The DBT was devised for the purpose of providing benefits from the Company to Dr. McGowan. (Doc. 103-1, at 1) ("through this Trust Agreement, . . . [the] Corporation desires to provide certain financial benefits to each employee designated on Schedule A as an incentive to remain with the Corporation and as compensation for prior valuable services rendered"). Additionally, Plaintiffs admit the DBT is a welfare benefit fund. (Doc. 103, at 22). The tax courts have previously held a corporate employer is the owner of a life insurance policy owned by a fund or trust under the split-dollar regulation. *See Our Country Home Enters., Inc. v. Comm'r of Internal Revenue*, 145 T.C. 1, 40 (2015). This Court finds that the Company is correctly treated as the owner of the policy under the regulation.

Because the transaction meets the requirements of the split-dollar regulation, the taxation rules of the regulation are applicable. 26 C.F.R. § 1.61-22(1)(2). Under these rules, "economic benefits are treated as being provided to the non-owner of the life insurance contract. The non-owner (and the owner for gift and employment tax purposes) must take into account the full value of all economic benefits described in paragraph (d)(2)" of the regulation." 26 C.F.R. § 1.61-22(d)(1). Paragraph (d)(2) provides that the full value of the economic benefits provided to the non-owner equals:

      (i)      The cost of current life insurance protection provided to the non-owner as determined under paragraph (d)(3) of this section;

      (ii)     The amount of policy cash value to which the non-owner has current access within the meaning of paragraph (d)(4)(ii) of this section (to the extent that such amount was not actually taken into account for a prior taxable year); and

      (iii)    The value of any economic benefits not described in paragraph (d)(2)(i) or (ii) of this section provided to the non-owner (to the extent not actually taken into account for a prior taxable year).

26 C.F.R. §1.61-22(d)(2). The parties disagree primarily over the correct accounting of provision (d)(2)(ii) – the amount of policy cash value to which Dr. McGowan had current access for tax years 2014 and 2015. Plaintiffs argue he had no current access to the cash value. (Doc. 103, at 9). Defendant argues he had current access to the entirety of the cash value. (Doc. 102, at 17).

*Current Access to Cash Value*

The Benefits Trust Agreement states Dr. McGowan had no "interest or right in or to" the policy while it was owned by the DBT, as it was in 2014 and 2015. (Doc. 103-1, at 6). But the split-dollar regulation defines "current access" in a perhaps counterintuitive way: "a non-owner has current access to that portion of the policy cash value . . . [t]o which, under the arrangement, the non-owner has a current *or future* right; and . . . [t]hat currently is directly or indirectly accessible by the non-owner, *inaccessible to the owner*, or inaccessible to the owner's general creditors." 26 C.F.R. § 1.61-22(d)(4)(ii) (emphasis added).

Plaintiffs argue "the cash value could not be accessed by anyone." (Doc. 105, at 12). This fact does not, however, mean that Dr. McGowan did not have "current access" to the cash value as that term is defined under the regulation. A non-owner has "current access" when he has "future right" to cash value inaccessible to the owner, and Dr. McGowan had "a 'future right' to the [p]olicy cash value because [he had] the exclusive right to designate who would receive

death benefits under the [p]olicy." *De Los Santos v. Comm'r of Internal Revenue*, 116 T.C.M. (CCH) 304, at *8 (2018).

Plaintiffs appear to argue that because the death benefits were subject to a "substantial risk of forfeiture" (referring to the provision that if the Company stopped paying the premiums during the policy term, the cash value of the policy would be distributed to a charity of Dr. McGowan's choosing), Dr. McGowan did not have the exclusive right to designate who would receive the benefit and thus did not have "current access". (Doc. 103, at 28); (Doc. 105, at 17).[1] The regulation makes no reference to whether a non-owner's future right to the policy value may be construed as "current access" where that future right is contingent.

Plaintiffs contend this contingency excludes the policy's cash value from the total value of economic benefits under the regulation by contrasting it to the facts of another split-dollar regulation case, where "the facts therein are clearly and significantly distinguishable": "'The Court has repeatedly held [that the regulation] does not allow an employer to deduct its payments to a *purported* welfare benefit plan *where the participating employees could receive the value reflected in insurance policies purchased by those plans*." (Doc. 103, at 29) (quoting *Our Country Home*, 145 T.C. at 48 (emphasis added by Plaintiffs)). The Court is not convinced that the emphasized portions are substantially different from the facts of this case. Plaintiffs seem to believe that the word "purported" means "sham" or "fictitious" (*see* Doc. 103, at 21); rather, it means "imputed" or "alleged". Even so, the split-dollar regulation expressly states that it applies to welfare benefit plans. 26 C.F.R. § 1.61-22(c)(1)(iii)(C). Additionally, this *is* a case where the participating employee (Dr. McGowan) could receive the value reflected in the insurance policy

---

1. The Court notes as an aside that Dr. McGowan designated the charity himself, just as he designated Michelle McGowan as the beneficiary in the event of his death, which in this Court's view means that even in the event of forfeiture, he had the right to designate who would receive the policy's value.

(by declining to renew the Restricted Property Trust transaction after the five-year term, as he did). (Doc. 37, at 7-8).

Defendant argues that "a contingent right is still a right", and that the split-dollar regulation makes no exception for a contingent right. (Doc. 109, at 9). While Plaintiffs argue that such a contingency being "[n]oticeably absent from the Treasury Regulation" implies that it makes the regulation inapplicable (Doc. 103, at 28), this Court finds that the regulation's plain language, including the absence of an exception for any "substantial forfeiture" provision in a policy, indicates that the regulation includes such contingent rights. Additionally, this Court notes that no insurance policy's benefit is conferred if its premiums are not paid; if potential cancellation of an insurance policy due to failure to pay premiums were enough to negate a future right to the policy's value or benefits, there is likely no case in which paragraph (d)(2)(ii) would apply. *Cf. United States v. Henry*, 983 F.3d 214, 218 (6th Cir. 2020) ("When interpreting a statute, we begin with the plain meaning of the statutory language. This requires that we look at the specific statutory language as well as the language and design of the statute as a whole.").

The Court therefore finds that Dr. McGowan had "current access" to the policy cash value as defined by the split-dollar regulation, and it should have been included as part of the value of economic benefits provided to Dr. McGowan and taxed accordingly. 26 C.F.R. § 1.61-22(d)(2).

*Deductions by the Company*

In addition to imposing tax consequences upon Dr. McGowan, the policy's fulfillment of the split-dollar regulation requirements imposes consequences upon the Company; namely: "No premium . . . is deductible by the owner." 26 C.F.R. § 1.61-22(f)(2)(ii). Plaintiffs attempted to deduct the Company's premium payments as a transfer to a trust subject to substantial risk of

12

forfeiture, pursuant to 26 U.S.C. § 83, and as contribution to a welfare benefit trust for an employee's benefit, pursuant to 26 U.S.C. §§ 162 and 419. (Doc. 102-9, at 10). But under 26 C.F.R. § 1.301-1, economic benefits flowing from split-dollar life insurance arrangements are "treated as a distribution of property", not as the transactions under which Plaintiffs could have deducted the income. *Machacek v. Comm'r of Internal Revenue*, 906 F.3d 429, 434 (6th Cir. 2018).

Despite Plaintiffs' assertions to the contrary, the facts relevant to Plaintiffs' deductions are similar to those in *Machacek*, where a company provided the premiums for its shareholder-employee's life insurance policy and deducted those premiums; the shareholder-employee included neither those premiums nor the "economic benefits flowing from the increase in value of the life insurance policy" on his tax return as individual income. *Id.* at 431. While the shareholder-employee in that case appeared to argue that the tax regulations "do not carry sufficient weight to overcome Congress' unambiguous standards expressed in [the tax code]" – as Plaintiffs here argue there is "no authority for the proposition that the IRS's interpretive regulation, 26 C.F.R. § 1.61-22, can supersede Congressionally enacted statutes" (Doc. 105, at 22) – the regulations help determine which statutes of the tax code apply. And "[26 C.F.R. §] 1.301-1 treats economic benefits provided to a shareholder pursuant to any split-dollar arrangement as a distribution of property . . . and are thus deemed to have been paid to the shareholder in his capacity as a shareholder." *Machacek*, 906 F.3d at 436. Because the policy value ought to have been included in Dr. McGowan's income, and because the Company was not permitted to deduct the premium payments, the IRS calculations of tax liability in the Notices of Deficiency are correct, and Defendant is entitled to summary judgment on these issues.

*Liability for Penalties*

Plaintiffs move for summary judgment on their liability for penalties assessed by the IRS under 26 U.S.C. §§ 6662 and 6662A[2] for (1) Dr. McGowan's underpayment of taxes (*see* Count I, Doc. 37, at 27), (2) the Company's underpayment of taxes (Count II, *id.* at 28), and (3) the Company's "participation in an 'undisclosed' reportable transaction" via its contribution to the DBT subtrust (Count III, *id.* at 28-29). Defendant moves for summary judgment on the former two of these three claims.

Under both statutes, where there is an underpayment of required tax, "there shall be added to the tax an amount equal to 20 percent of the [amount of the underpayment]." 26 U.S.C. §§ 6662(a), 6662A(a). Section 6662 applies to any underpayment attributable to, in relevant part, negligence or disregard of rules or regulations, any substantial understatement of income tax, or any substantial valuation misstatement under chapter 1. 26 U.S.C. § 6662(b)(1-3). Section 6662A applies to any understatement of a listed or reportable transaction defined in 26 U.S.C. §6707A(c). 26 U.S.C. § 6662A(d).

*Section 6662 Penalty*

The Notice of Deficiency states Dr. McGowan's penalty liability is attributable to "one or more of (1) negligence or disregard of rules or regulations, (2) any substantial understatement of income tax, or (3) any substantial valuation overstatement". (Doc. 37-1, at 10). A substantial understatement is defined in the statute as any amount greater than ten percent of the tax required to be paid or any amount greater than $5,000. 26 U.S.C. § 6662(d)(1)(A). According to the

---

2. Plaintiffs state in their Amended Complaint, Motion for Summary Judgment, and various response briefs that both Notices of Deficiency asserted penalties under § 6662A. According to the Notices attached to their Amended Complaint, while the Company's Notice of Deficiency listed penalties under § 6662A (Doc. 37-6, at 1), Dr. McGowan's Notice of Deficiency listed penalties under § 6662, which is a different statute (Doc. 37-1, at 2). This Court analyzes the claims under the statutes respectively listed on the Notices.

Notice of Deficiency, the IRS concluded Dr. McGowan understated his tax liability for 2014 by $30,813 and his tax liability for 2015 by $23,857. (Doc. 37-1, at 2).

Plaintiffs argue Dr. McGowan is not liable for the penalty under rationale (1) "because Plaintiffs disclosed the transaction on a Form 8275". (Doc. 105, at 23). Plaintiffs argue Dr. McGowan is not liable for the penalty under rationales (2) and (3) because "the Government fails to present any evidence that the alleged tax deficiency was a substantial understatement[] and . . . did not provide any computation of same." (Doc. 105, at 23). The government argues that because the statute disallows exceptions to penalties for tax shelters, Plaintiffs are liable for the penalty. (Doc. 109, at 19) (citing 26 U.S.C. § 6662(d)(2)(C)).

Under the statute, disclosure is a defense to a substantial understatement penalty only where "there is a reasonable basis for the tax treatment of such item by the taxpayer." 26 U.S.C. § 6662(d)(2)(B)(ii). Plaintiffs do not attempt to set forth such a basis in their briefs; they infer in their Amended Complaint that Dr. McGowan's tax reporting was performed pursuant to advice from his "advisors," but do not identify the advisors. *See, e.g.*, Doc. 37, at 8. In their opposition to Defendant's Motion for Summary Judgment, Plaintiffs cite the testimony of the insurance agent who sold the policy and the individual who promoted the Restricted Property Trust transaction; it is possible these were the advisors to whom Plaintiffs meant to refer. (Doc. 105, at 24). Reliance on an interested source for matters of tax liability is not considered reasonable by courts in the Sixth Circuit. *See, e.g.*, *Illes v. Comm'r of Internal Revenue*, 982 F.2d 163, 166 (6th Cir. 1992).

The statute does not allow exceptions to penalties for tax shelters, defined as "(I) a partnership or other entity, (II) any investment plan or arrangement, or (III) any other plan or arrangement, if a significant purpose of such partnership, entity, plan, or arrangement is the

15

avoidance or evasion of Federal income tax." 26 U.S.C. § 6662(d)(2)(C). While Defendant cites testimony that the setup of the life insurance policy was paid with "tax preferable dollars", it provides no evidence for the assertion that evading proper tax was a significant purpose of the transaction. (Doc. 102, at 23).

Because neither party has set forth sufficient proof to meet the disclosure exception or the tax shelter rule, the Court finds the most straightforward way to determine this claim is via rationale (2) of the Notice of Deficiency, that Dr. McGowan is liable for a penalty due to substantial understatement of income tax. Under the split-dollar regulation, Dr. McGowan was treated as receiving a benefit in the form of the cost of current life insurance protection provided to him and the amount of policy cash value to which he had "current access" (as discussed *supra*).

This led to an understatement of his 2014 income by an amount of $104,489 and an understatement of his 2014 tax liability by $30,813, as computed in the Notice of Deficiency (despite Plaintiffs' assertion no such computations were made). (Doc. 37-1, at 18). Similarly, in 2015, it led to an understatement of income by $76,661 and an understatement of tax liability by $23,857. *Id.* Such amounts are clearly above the statutory threshold for classification as a "substantial understatement", and Dr. McGowan is thus liable for penalties equivalent to 20 percent of the amount of tax liability understatement each year.

### Section 6662A Penalties

Plaintiffs ostensibly assert two separate claims for refund of penalties against the Company pursuant to 26 U.S.C. § 6662A. (Doc. 37, at 28-29). In their Motion for Summary Judgment, however, they do not differentiate between these two claims. *See* Doc. 103, at 33. Defendant ostensibly moves for summary judgment on the first of these claims, but not the

second. (Doc. 102, at 5). In its Motion for Summary Judgment and other briefs, however, it does not address the Company's liability for penalties at all. Because the evidence and argument presented by the parties on the Company's liability for penalties under §6662A is insufficient to make any determination of fact or law, this Court declines to grant summary judgment to either party on the issue.

*Remaining Claims*

Plaintiffs' remaining claims include: unauthorized agency action in violation of the APA (Doc. 37, at 29); arbitrary and capricious action in violation of the APA (*id.* at 32); and failure to provide notice and opportunity for comment in violation of the APA (*id.* at 33). Plaintiffs claim to move for summary judgment on these claims. (Doc. 103, at 1) ("Plaintiffs . . . move for summary judgment on all of Plaintiffs' claims"). They do not mention or discuss these three claims in their motion or responses whatsoever. Defendant likewise did not discuss these claims in response to Plaintiffs' motion. Because the argument presented is insufficient to make any determination, this Court declines to grant Plaintiffs summary judgment on these three claims.

<u>Motion to Shift Burden</u>

Plaintiffs moved for the Court to shift the burden of proof to Defendant pursuant to 26 U.S.C. § 7491. (Doc. 107). Defendant opposed this motion (Doc. 110), and Plaintiffs replied (Doc. 111). The Court denies this motion.

"In a tax refund suit, plaintiffs have the burden of proving by a preponderance of the evidence that they are entitled to a refund." *Dargie*, 742 F.3d at 245. That burden can be shifted to the government where "a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer." 26 U.S.C. § 7491. A taxpayer must have additionally "complied with the requirements . . . to substantiate any item", "maintained all

17

records required [and] cooperated with reasonable requests by the [government] for witnesses, information, documents, meetings, and interviews", and, "in the case of a partnership, corporation, or trust", as is the case for the Company, been "described in section 7430(c)(4)(A)(ii)." 26 U.S.C. § 7491(a)(2). That statute requires the taxpayer to "meet the requirements of the 1st sentence of section 2412(d)(1)(B) of title 28". 26 U.S.C. § 7430(c)(4)(A)(ii).

The specific factual issues for which Plaintiff seeks to shift the burden of proof are: (1) "Dr. McGowan is not subject to tax on accumulated cash value in 2014 and 2015" (Doc. 107, at 17) and (2) "Plaintiffs' stated business purpose for engaging in the transaction is business perpetuation" (*id.* at 19).

Whether Dr. McGowan is subject to tax on accumulated cash value in 2014 and 2015 is a mixed legal and factual issue as well as the overarching question of this case. Because § 7491 allows a plaintiff to shift the burden of proof to the defendant only "with respect to any *factual* issue," it would be inappropriate for the Court to allow it for such a broad issue spanning both fact and law.

Plaintiffs' stated business purpose has no bearing upon the outcome of any issues in this case. While both parties spent significant energy discussing Plaintiffs' business purpose in their briefs, 26 C.F.R. § 1.61-22 and 26 C.F.R. § 1.301-1, the regulations which govern the proper tax treatment of the transaction at issue, make no reference to or exceptions based on business purpose; it is entirely irrelevant. Defendant acknowledges this in its response to Plaintiffs' motion (Doc. 110, at 3) ("the split-dollar regulation applies to the transaction regardless of Dr. McGowan's business purpose") despite engaging in lengthy argument on the subject in its earlier briefs. Shifting the burden of proof on this issue would therefore be futile.

In their reply brief, Plaintiffs set forth three new specific factual issues for which they seek to shift the burden of proof: "(1) the qualified direct cost (as defined in 26 U.S.C. § 419) is the amount deducted by [the Company], (2) the risk of forfeiture in the RPT is substantial in accordance with 26 U.S.C. § 83, and (3) the benefits provided through the plan were ordinary and necessary business expenses in accordance with 26 U.S.C. § 162." (Doc. 111, at 6).

"It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in opposition." *In re Firstenergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 599 (N.D. Ohio 2004). Because Plaintiffs impermissibly raised three new issues, Defendant properly moved to file a sur-reply to address them. (Doc. 112). "[S]ur-replies may be allowed when new . . . arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated." *NOCO Co. v. Shenzhen Valuelink E-Commerce Co., Ltd.*, 550 F. Supp. 3d 488 (N.D. Ohio 2021). The Court therefore grants Defendant's motion for leave to file sur-reply; the proposed sur-reply was attached to Defendant's motion and is now incorporated into the briefing.

Defendant argues in this sur-reply that whether the transactions stated by Plaintiffs are defined as they desire under 26 U.S.C. §§ 83, 162, and 419 are legal issues. (Doc. 112-1, at 1-2). This Court agrees. "Qualified direct cost", "substantial risk of forfeiture", and "ordinary and necessary business expenses" are terms of law; the issues presented by Plaintiffs in their reply brief are once again mixed issues of fact and law, and therefore inappropriate for application of § 7491. Additionally, as discussed *supra*, the Court held that under the regulations in 26 C.F.R. §§ 1.61-22 and 1.301-1, 26 U.S.C. §§ 419, 83, and 162 do not apply; shifting the burden of proof here would again be futile. Plaintiffs' motion to shift the burden of proof to Defendant is therefore denied.

19

The Company's liability for penalties under 26 U.S.C. § 6662A and Plaintiffs' claims for unauthorized agency action in violation of the APA, arbitrary and capricious action in violation of the APA, and failure to provide notice and opportunity for comment in violation of the APA remain pending.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. 103) be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 102) be and the same hereby is, GRANTED in part and DENIED in part; and it is

FURTHER ORDERED that Defendant's Motion for Leave to File Sur-Reply (Doc. 112) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Plaintiffs' Motion to Shift Burden of Proof (Doc. 107) be, and the same hereby is, DENIED.


 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE