IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **DR. PETER E. MCGOWAN, et al.,** | CASE NO. 3:19 CV 1073 |
| Plaintiffs, | |
| v. | JUDGE JAMES R. KNEPP II |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | MEMORANDUM OPINION AND ORDER |

### INTRODUCTION

Previously in this suit for a tax refund, this Court's ruling on the parties' competing motions for summary judgment partially resolved the case. *See* Doc. 113. Since then, the parties have further resolved several outstanding issues via stipulation. *See* Docs. 121, 122, and 123. Plaintiffs have now filed an Amended Motion for Reconsideration concerning one of this Court's previous holdings. (Doc. 117). The issue is fully briefed and ripe for decision. For the following reasons, the Court denies Plaintiffs' motion.

### BACKGROUND

As summarized in this Court's prior Order (Doc. 113), this case concerns a whole life insurance policy called a Restricted Property Trust adopted by the dental practice, Plaintiff Peter E. McGowan DDS, Inc. ("the Company"), of Plaintiff Peter McGowan ("Dr. McGowan") in 2011. (Doc. 37, at 6). The Company, established in 1994, is taxed as a C corporation, and Dr. McGowan is its sole shareholder. *Id.* at 5.

The Restricted Property Trust consisted of two irrevocable "subtrusts", the Death Benefit Trust ("DBT") and the Restricted Property Trust ("RPT"). (Doc. 103-1, at 1). The trustee of both

subtrusts in this case was Aligned Partners Trust Company. *Id.* at 18. Dr. McGowan's company paid $37,222 to the DBT each year and $12,778 to the RPT each year. *Id.* at 4.

The DBT used its yearly contribution to pay the premium on the whole life insurance policy. *Id.* The RPT transferred its yearly contribution to the DBT, which then invested the RPT's contribution as a "paid-up addition" to the policy to increase its cash value and death benefit. *Id.* at 4-5. In return, the DBT subtrust gave the RPT subtrust a security interest in the insurance policy. *Id.* at 5. The policy structure had terms of five years; as long as the premium was paid by the DBT each year, the transaction was to remain in effect for the five-year term. *Id.* at 7. During this time, the insurance policy was owned by the DBT, which, along with the RPT, was owned by the trustee. *Id.* at 6. The policy stated that Dr. McGowan and the Company had no "interest or right in or to" the policy while owned by the DBT. *Id.*

Pursuant to the policy, if Dr. McGowan died during the term, the insurance company would pay the death benefit to the DBT, which would then pay it to Dr. McGowan's designee. *Id.* At the end of the term, the Company could extend the transaction for another five-year term; if it was not extended, the transaction would end and the life insurance policy would be transferred to Dr. McGowan. *Id.* at 8. Dr. McGowan's designee was his wife, Plaintiff Michelle McGowan. (Doc. 102-5, at 1). If the Company did not pay the premium to the DBT, the DBT would surrender the policy for its cash value, transfer that cash value to the RPT to satisfy the RPT's security interest, and the RPT would pay the cash value to a charity designated by Dr. McGowan. (Doc. 103-1, at 9).

After five years of paying the premiums, the Company did not renew the insurance policy, and it was transferred to Dr. McGowan. *Id.* at 7. Dr. McGowan apparently attempted to renew the transaction in 2016, according to an amendment to the Benefits Trust Agreement, but this

2

attempted renewal was made a year too late by the terms of the original agreement, and in 2017, counsel for Dr. McGowan informed the IRS the transaction and its trusts were no longer in effect. (Doc. 102-12, First Amendment to Benefits Trust Agreement, at 1; Doc. 102-8, 2017 Letter to IRS, at 16).

The Company reported the $12,778 paid yearly by the Company to the RPT as part of its income in each applicable tax years. (Doc. 102-8, at 17). According to the Company's 2012 tax return, this figure was included as income pursuant to 26 U.S.C. § 83(b). (Doc. 102-9, 2012 Tax Return, at 10). The Company did not report the $37,222 contributed to the DBT as part of its income each year. (Doc. 102-8, at 17). The Company did list the payment to the DBT each year as a deduction on its tax return as a contribution to a welfare benefit trust for an employee's benefit. (Doc. 102-9, at 10).

In April 2018, the IRS issued a Notice of Deficiency to Dr. McGowan for a deficiency of $30,813 and a penalty of $6,161,60 for tax year 2014 and a deficiency of $23,857 and a penalty of $4,758.20 for tax year 2015; in December 2019, the IRS issued a Notice of Deficiency to the Company for a deficiency of $15,897 and a penalty of $4,354.97 for tax year 2014 and a deficiency of $12,558 and a penalty of $4,354.97 for tax year 2015. (Doc. 37-1, at 1); (Doc. 37-6, at 1). After an administrative appeal process, the Company elected to pay the assessed deficiencies, penalties, and interest calculated by the IRS and later proceed with a refund claim in this Court. (Doc. 37-9, at 1). This Court previously granted summary judgment to Defendant United States on Counts I and II of Plaintiffs' Amended Complaint – claims for refund of the tax bills paid by the McGowans and the Company in response to the IRS's Notices of Deficiency. *See* Doc. 113.

## STANDARD OF REVIEW

"District courts possess the authority and discretion to reconsider and modify interlocutory judgments any time before final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 952 (6th Cir. 2004). Motions for reconsideration are, however, generally disfavored. *See, e.g.*, *Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003). They should only be granted where the movant demonstrates "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014) (quoting *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)).

## DISCUSSION

In its prior Order, this Court held, in relevant part, that Plaintiff Peter E. McGowan, DDS, Inc. ("the Company"), was correctly treated as the owner of the insurance policy at issue (Doc. 113, at 9); the split-dollar regulation, 26 C.F.R. § 1.61-22, applies to the insurance transaction (*id.*); Plaintiff Dr. Peter McGowan had current access to the policy's cash value as defined by the split-dollar regulation, and that cash value should therefore have been included as benefits to Dr. McGowan for tax purposes (*id.* at 12); and the Company could not properly deduct premiums it paid to the insurance policy, meaning the IRS' initial tax liability calculations were correct (*id.* at 13).

In their Motion for Reconsideration, Plaintiffs state they take issue only with that first holding – that the Company owned the insurance policy. (Doc. 117, at 4). A change in this holding, of course, would essentially undo the rest of the Court's Order, as the split-dollar regulation applies to arrangements "between an owner and a non-owner of a life insurance contract" where several other requirements are met. 26 C.F.R. § 1.61-22(b)(2)(ii). Plaintiffs argue it was incorrect to hold

4

the Company owned the policy, as such a holding would "render[] the attribution rules [of the split-dollar regulation] applicable", the result of which "is that [the Company], which is not an 'owner' of the policy, is 'treated as the owner'[,] thereby resulting in the split-dollar regulations arguably being applicable." (Doc. 117, at 7).

This was precisely this Court's previous holding: the Company is properly treated as an owner of the policy under the tax regulations, making the split-dollar regulation applicable to the transaction. As the Court previously stated, the split-dollar regulation itself treats the employer as the owner of the life insurance contract if the named owner of the contract is, among other options, a welfare benefit fund "within the meaning of section 419(e)(1)." 26 C.F.R. § 1.61-22(c)(1)(iii). Section 419(e)(1) defines a welfare benefit fund as any fund "which is part of a plan of an employer, and . . . through which the employer provides welfare benefits to employees or their beneficiaries." 26 U.S.C. § 419(e)(1). The fund at issue was created expressly to provide benefits from the Company to Dr. McGowan. (Doc. 103-1, at 1). Plaintiffs admitted the fund was a welfare benefit fund. (Doc. 103, at 22). Plaintiffs now argue this Court incorrectly relied upon *Our Country Home Enters., Inc. v. Comm'r*, 145 T.C. 1 (2015), in which the parties stipulated that the corporate employer owned the policy. (Doc. 117, at 4). But even without this case, the definitions included in the split-dollar regulation and Section 419(e)(1) straightforwardly apply to the life insurance policy in the instant case. Plaintiffs' insistence that the company "was never a title owner of the policy" (Doc. 117, at 5) is unavailing.

Plaintiffs additionally argue the Court's order was unclear as to whether it held the transaction at issue was a compensatory or shareholder arrangement, with the clear implication they believe the transaction was a "shareholder arrangement", making the split-dollar regulation's attribution rules inapplicable. (Doc. 117, at 6). The Court therefore confirms now that the

5

transaction is a compensatory arrangement, as it meets the elements of the split-dollar regulation's compensatory arrangement rules. *See* Doc. 113, at 7-8; 26 C.F.R. § 1.61-22(b)(2)(ii) ("**Compensatory arrangements.** An arrangement is described in this paragraph (b)(2)(ii) if the following criteria are satisfied . . .").

Plaintiffs next argue that the Court wrongly concluded the particular transaction at issue is to be treated as a distribution of property. (Doc. 117, at 6). In so holding, this Court relied upon Treasury regulations and Sixth Circuit precedent:

> [U]nder 26 C.F.R. § 1.301-1, economic benefits flowing from split-dollar life insurance arrangements are "treated as a distribution of property", not as the transactions under which Plaintiffs could have deducted the income. *Machacek v. Comm'r of Internal Revenue*, 906 F.3d 429, 434 (6th Cir. 2018).

(Doc. 113, at 13). Plaintiffs contend this holding rejects federal statutes which require the Company not be treated as an owner of the life insurance policy and therefore make the split-dollar regulations inapplicable. (Doc. 117, at 11). Plaintiffs specifically cite 26 U.S.C. §§ 83, 162, and 419 as superseding the split-dollar regulation and state a provision of the Treasury regulation itself, 26 C.F.R. § 1.61-1(b), precludes its applicability in this instance. *Id.*

26 C.F.R. § 1.61-1(b) provides:

> Cross references to other provisions of the Code are to be found throughout the regulations under section 61. The purpose of these cross references is to direct attention to the more common items which are included in or excluded from gross income entirely, or treated in some special manner. To the extent that another section of the Code or of the regulations thereunder, provides specific treatment for any item of income, such other provision shall apply notwithstanding section 61 and the regulations thereunder. The cross references do not cover all possible items.

If one of these statutes "provides specific treatment" for the income at issue in this case, then, that statute will apply rather than the Treasury regulation that would apply otherwise.

Section 83 allows a taxpayer who receives income subject to a "substantial risk of forfeiture" to pay tax on the income when it is received instead of when the forfeiture either occurs

6

or expires. 26 U.S.C. § 83(b). Plaintiffs originally attempted to deduct the Company's premium payments to the life insurance policy pursuant to § 83. (Doc. 102-9, at 10).

Section 162 provides that "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" may be deducted. 26 U.S.C. § 162(a). Section 419 provides that contributions "paid or accrued by an employer to a welfare benefit fund . . . shall not be deductible under this chapter, but . . . if they would otherwise be deductible, shall (subject to the limitation of subsection (b)) be deductible under this section for the taxable year in which paid." 26 U.S.C. § 419(a). Plaintiff originally also attempted to deduct the Company's premium payments pursuant to these statutes – presumably construing the premium payments as an "ordinary and necessary expense" under § 162 which would satisfy the "otherwise [] deductible" requirement of § 419. (Doc. 102-9, at 10).

Plaintiff argues these statutes concerning permissible deductions make the attribution rules of the split-dollar regulation – the "condition precedent to any finding that Plaintiffs' transaction is subject to the split-dollar regulations" (Doc. 117, at 11) – inapplicable. But Plaintiffs do not point to what, precisely, in these statutes "provides specific treatment" for the income at issue which would override the split-dollar regulation. It is actually a cross-reference to one of these statutes which makes this particular life insurance scheme meet one of the split-dollar regulation requirements: "the employer . . . is treated as the owner of the life insurance contract if the owner [is] . . . [a] welfare benefit fund within the meaning of section 419(e)(1)." 26 C.F.R. § 1.61-22(c)(1)(iii). By Plaintiffs' own argument, the transaction at issue is a welfare benefit fund to which § 419 applies.

None of these statutes includes a provision which concerns how to determine the owner of a welfare benefit fund or life insurance policy. None conflicts with the elements which make a

7

transaction split-dollar. None makes any statements about when or how the owner of a life insurance policy is to be decided. Plaintiffs do not explain how they do so or point to a specific provision of any of these statutes.

Plaintiffs instead argue the attribution rules – specifically, the provision that treats an employer as the owner of the life insurance contract if the owner is a welfare benefit fund under § 419, 26 C.F.R. § 1.61-22(c)(1)(iii) – are invalid under *Chevron U.S.C., Inc. v. Natural Resource Defense Council, Inc*, 467 U.S. 837 (1984). (Doc. 117, at 9). When "Congress has delegated authority to an agency to make rules having the 'force of law' and the agency rule at issue was 'promulgated in the exercise of that authority," that regulation is afforded deference under *Chevron*. *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001). The split-dollar regulation was issued pursuant to 26 U.S.C. § 7805 via the notice-and-comment process, making it entitled to *Chevron* deference. *See* 67 Fed. Reg. 45414 (2002); 68 Fed. Reg. 244898 (2003); 68 Fed. Reg. 54336 (2003).

There are exceptions to *Chevron* deference in certain circumstances. "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First . . . is the question whether Congress has directly spoken to the precise question at issue. . . . [I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 842-43.

Plaintiffs argue Congress "expressly authorized contributions to welfare benefit funds to the extent of the welfare benefit funds' qualified direct cost for any taxable year" with 26 U.S.C. § 419(b), meaning that "because Congress has specifically addressed the exact deduction that the IRS attempts to deny through the . . . split-dollar regulations, the regulation is invalid." (Doc. 117,

8

at 9-10). Plaintiffs then argue that even if the deductions at issue had not been specifically addressed, "the Treasury's regulation 'treating' [the Company] as the owner of a life insurance contract actually owned by a welfare benefit fund is not a permissible construction" of 26 U.S.C. §§ 83, 162, and 419. *Id.* at 10-11.

Defendant replies that the split-dollar regulation is valid "because the statute does not explicitly address [the] treatment for split-dollar arrangements and because the regulation is a reasonable interpretation of the statute." (Doc. 118, at 5). At the outset, Defendant notes that "[r]egulations promulgated under the Secretary [of the Treasury]'s authority are sustained unless found to be unreasonable and demonstrably inconsistent with the Internal Revenue Code." *Id.* at 6 (quoting *F.E. Schumacher Co. v. United States*, 308 F. Supp. 2d 819, 829 (N.D. Ohio 2004) (citing *Comm'r v. Portland Cement Co. of Utah*, 450 U.S. 156, 169 (1981))).

Defendant further argues the statutory regime is ambiguous "because Congress did not provide specific rules for the taxation of split-dollar life insurance." (Doc. 118, at 8). While Plaintiffs argue the statute is not ambiguous, they concede "the definition of gross income set forth in 26 U.S.C. § 61 is silent as to 'split-dollar life insurance arrangements.'" (Doc. 117, at 10). Plaintiffs additionally refer to 26 U.S.C. §§ 83, 162, and 419. (Doc. 117, at 9-11). These statutes, all summarized *supra*, do not address how to treat split-dollar life insurance arrangements, their contributions, or their owners. Section 419 does, however, as described above, provide that contributions "paid or accrued by an employer to a welfare benefit fund . . . shall not be deductible" unless deductible under some other section. 26 U.S.C. § 419(a). What little in these statutes does address the issue at hand would appear to support the split-dollar regulation, not contradict it. The Court therefore agrees with Defendant that the Internal Revenue Code does not "directly [speak] to the precise question at issue." *Estate of Gerson v. Comm'r*, 507 F.3d 435, 438 (6th Cir. 2007).

9

Defendant notes that both tax courts and the Sixth Circuit have held gross income "generally includes cash or property set aside for the benefit of a taxpayer." (Doc. 118, at 9) (citing *Pulsifer v. Comm'r*, 64 T.C. 245, 246-47 (1975); *Sproull v. Comm'r*, 16 T.C. 244 (1951), *aff'd per curiam*, 194 F.2d 541 (6th Cir. 1952); *Brodie v. Comm'r*, 1 T.C. 275 (1942)). Defendant argues the split-dollar regulation, particularly its attribution rules which treat the Company as the policy owner, "simply reflect the Secretary's reasonable determination that employers often structure compensatory life insurance arrangements through trusts and that use of a trust to hold a policy rather than holding the policy directly should not alter the outcome under the regulation." (Doc. 118, at 9).

The Court notes it is not only the split-dollar regulation which makes the contributions to the policy non-deductible: another Treasury regulation requires that "[t]he provision by a corporation to its shareholder pursuant to a split-dollar life insurance arrangement, as defined in §1.61-22(b)(1) or (2), of economic benefits . . . is treated as a distribution of property" and that "[a] payment by a corporation on behalf of a shareholder of premiums on a life insurance contract or an undivided interest therein that is owned by the shareholder constitutes a distribution of property, even if such payment is not part of a split-dollar life insurance arrangement". 26 C.F.R. § 1.301-1(m)(1) and (2). And distributions of property to shareholders are not deductible. 26 U.S.C. § 311(a). Even if the split-dollar regulation did not apply, the Company's payment of the premiums for Dr. McGowan's life insurance policy would be considered by another Treasury regulation and a statutory provision to be non-deductible distributions of property. *See also Machacek v. Comm'r*, 906 F.3d 429, 434 (6th Cir. 2018). The Court therefore finds the split-dollar regulation to be a permissible construction of the tax code under *Chevron*.

10

The Court also notes that when a taxpayer seeks to bring a suit for a tax refund, they must first file an administrative claim with the Secretary of the Treasury; that claim "must set forth in detail each ground upon which a credit or refund is claimed". 26 U.S.C. § 7422(a); 26 C.F.R. § 301.6402-2(b)(1). "Federal courts have no jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim." *McDonnell v. United States*, 180 F.3d 721, 722 (6th Cir. 1999) (quoting *Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992)).

In their reply in support of the instant motion, Plaintiffs confirm both that (1) "at all times during the administrative proceedings before the IRS, Plaintiffs argued that the deduction was properly reported under 26 U.S.C. §§ 162 and 419, because, among other reasons, the policy was owned by an independent and irrevocable trust, not by [the Company]" (Doc. 119, at 2), and (2) "the ultimate issue before the Court [now] is: [whether] the attribution rules set forth in the IRS's interpretive treasury regulation 26 C.F.R. § 1.61-22 [can] be applied to all welfare benefit plans that own life insurance policies to disallow deductions" (Doc. 119, at 3-4). It is unclear whether Plaintiffs properly raised their *Chevron* argument at the administrative level.

Accordingly, this Court sees no reason to find the consequences of meeting the split-dollar regulation's requirements do not apply. The Court reiterates its previous holdings that the split-dollar regulation applies to the transaction at issue, the policy cash value should have been included as part of the value of economic benefits provided to Dr. McGowan and taxed accordingly, and the Company may not deduct the premiums it paid. *See* Doc. 113. This Court's previous Order additionally held Dr. McGowan is liable for penalties "equivalent to 20 percent of the amount of tax liability understatement each year" under 26 U.S.C. § 6662. (Doc. 113, at 15). The Court now

also confirms that this holding stands. In other words, Defendant remains entitled to judgment on Counts I and II of Plaintiffs' Amended Complaint.

Since the Court's prior Order, the parties stipulated Plaintiffs are entitled to judgment on Count III of the amended complaint and stipulated to the dismissal of Counts IV, V, and VI of the amended complaint with prejudice. *See* Doc. 123. Every count of Plaintiffs' Amended Complaint, therefore, has now been either dismissed or resolved by this Court. In accordance with the Court's judgment, Defendant is entitled to summary judgment on Counts I and II. In accordance with the parties' stipulations (Docs. 115, 121, 122) and the Court's order to their effect (Docs. 123, 124), Plaintiffs Dr. Peter E. McGowan and Michele L. McGowan are entitled to refunds of taxes, interest, and penalties of $25,635.48 for tax year 2014 and $15,342.59 for tax year 2015 as of December 18, 2023, plus statutory interest competed in accordance with 26 U.S.C. § 6611 and 28 U.S.C. § 1961(c)(1); Plaintiff Peter E. McGowan DDS, Inc. is entitled to judgment on Count III in the amount of $2020.06 for tax year 2014 and $3,123.56 for tax year 2015 as of December 15, 2023, plus statutory interest competed in accordance with 26 U.S.C. § 6611 and 28 U.S.C. § 1961(c)(1); and Counts IV, V, and VI are dismissed with prejudice.

## Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiffs' Amended Motion for Reconsideration (Doc. 117) be, and the same hereby is, DENIED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE